*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAKE SERVICE SHIPPING COMPANY,

      Plaintiff-Appellee,

v

GRAND RIVER NAVIGATION COMPANY, INC.,

      Defendant-Appellant.

UNPUBLISHED
November 17, 2022

No. 356073
Muskegon Circuit Court
LC No. 18-005250-CK

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

BOONSTRA, J. (*concurring in part and dissenting in part*).

I concur with the majority in its interpretation of the phrase "all required structural repairs" as used in ¶ 15(a) of the parties' Charter Party Agreement, and in concluding that the trial court properly instructed the jury regarding the substantial-breach doctrine. I dissent, however, from the majority's interpretation of the phrase "then value" as used in ¶ 15(a). Because I find the phrase to be unambiguous, I would hold that the trial court erred by instructing the jury that it could interpret the phrase using extrinsic evidence, and would vacate the trial court's judgment and remand for a new trial.

The majority correctly notes that contracts are to be read as a whole, and even criticizes defendant Grand River Navigation Company, Inc. (GRNC) for "improperly isolating" another contractual phrase (in ¶ 15(a)) from its context. Yet the majority commits the same error in analyzing the phrase "then value" as found in ¶ 15(a). The mere fact that, in general, the word "then" has multiple definitions does not mean that the phrase "then value," when considered *in situ* in ¶ 15(a), is ambiguous.

Paragraph 15(a) states, in pertinent part:

15.(a) . . . If at any time during the Term of the Charter under the Agreement the cost of all required structural repairs necessary for Charterer to remain in compliance under this Agreement at the time of each five year classification society inspection due to normal wear and tear exceeds the then value of the Vessel, the Charter under this Agreement may be terminated by Charterer upon 20 days'

written notice to Owner. In that event, the hire is to be prorated from the last yearly term payment.

When read in context, see *Davis v Valsamis, Inc*, 752 Fed App'x 688, 692 (CA 11, 2018), the phrase "then value of the vessel" in ¶ 15(a) is unambiguous and refers to the vessel's value at the time of the five-year survey, calculated *prior* to the necessary repairs being performed; it cannot reasonably be construed to mean the value after repairs on the vessel are performed. When used as an adjective to modify a noun, such as "value," the word "then" is commonly understood to mean "existing or acting at or belonging to the time mentioned." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Then" can also mean "at that time." *Id*. Looking at ¶ 15(a), the relevant time—that is, the time mentioned—is the time of the five-year survey. The five-year survey is the time that costs of repairs are to be determined, and the corresponding reference to "then value of the vessel" in the same sentence indisputably supports that the vessel's value should be assessed as of that time. Nothing in the language of ¶ 15(a) supports plaintiff Lake Service Shipping Company's (LSSC) position that the vessel should instead be valued *after* repairs are performed. And contrary to the majority's suggestion, the opening clause of ¶ 15(a) ("If at any time during the Term of the Charter") does not in any way impact the meaning of "then value" or create any ambiguity; it merely indicates that if the prerequisites of ¶ 15(a) are satisfied (i.e., that the described cost of structural repairs exceeds the then value of the vessel) at any time during the contract term, the termination provision may be invoked.[1]

The majority falls victim to LSSC's claim that "then value" could be read to mean "then resultant value." LSSC offers several definitions for the word "then" from various dictionaries to the effect that "then" can refer to a time in the future. Improperly isolating the word "then" from its context, the majority makes the same mistake. Certainly, "then" has various definitions. For example, as an adverb, it can also mean "soon after that: next in order of time," "following after in order of position, narration, or enumeration: being next in the series," "in addition," or "in that case." *Merriam-Webster's Collegiate Dictionary* (11th ed). Given the various meanings of "then," if considered in isolation, without regard to the remainder of ¶ 15(a), "then" might seem ambiguous because it would be unclear what time was at issue; indeed, this is how the majority arrives at its conclusion that the phrase is ambiguous. But, again, words and phrases cannot be

---

[1] The majority's interpretation would expose GRNC to potentially unlimited liability for the cost of repairs—even if "due to normal wear and tear"—that, when performed, would cause the vessel to be valued at even one dollar more than the cost of the repairs. By way of extreme example, if the vessel were so badly damaged, through normal wear and tear, that only a small piece of it remained intact, but if that piece could be "repaired" by essentially building a new ship around it, the resulting ship would be valued slightly higher than the cost of the repairs. Although it might be debatable whether the resulting ship was the same vessel as the original—not unlike in Plutarch's "Ship of Theseus" paradox (see Plutarch, *Life of Theseus*, 23.1)—the majority's interpretation of ¶ 15(a) would obligate GRNC to perform those repairs and to deliver a brand new vessel to plaintiff at the end of the charter period. More simply put, under the majority's interpretation, GRNC would nearly always be liable for required structural repairs caused by normal wear and tear, regardless of the cost or the amount of time the vessel would be out of commission while those repairs were performed.

read in isolation; contracts must be read as a whole and words interpreted in context. See *Davis*, 752 Fed App'x at 692. When ¶ 15(a) is read as a whole, the time in question is clear, and the term "then value" unambiguously refers to the value at the time of the five-year survey. See *In re Fitzgerald Marine & Repair, Inc*, 619 F3d at 859. Absent susceptibility to two reasonable interpretations that are fairly made, the term "then value" in ¶ 15(a) is not ambiguous. See *Davis*, 752 Fed App'x at 692.

I acknowledge that one of LSSC's witnesses, Greg Canestraight (Canestraight), who negotiated the 2006 amendment on behalf of LSSC, testified at trial that he believed that the vessel should be valued for purposes of ¶ 15(a) on the basis of the "then resultant" value, i.e., the value after repairs had been performed. However, this type of extrinsic evidence cannot be used to create an ambiguity when none exists. See *In re Fitzgerald Marine & Repair, Inc*, 619 F3d at 858. Accordingly, Canestraight's testimony about how he thought ¶ 15(a) should apply does not establish an ambiguity. See *id*.

Contrary to the majority's assertion, my interpretation of ¶ 15(a) would not offer GRNC a "get out of jail free" card or allow it to "trash" the vessel without consequence. Certainly, reading the contract as a whole and harmonizing the various provisions, the invocation of ¶ 15(a) could excuse GRNC from performing the "required structural repairs" at issue in ¶ 15(a). However, the application of ¶ 15(a) (if properly invoked)[2] would not defeat LSSC's *other* claims for breach of contract. Termination of a contract generally applies prospectively to eliminate future obligations, not retroactively to cure past breaches. See *Armour & Co v Nard*, 463 F2d 8, 11 (CA 8, 1972). That is, "generally, the exercise of a power of termination will have prospective operation only; discharging both parties from their contractual duty to perform promises that are still wholly executory, but not discharging liability for breaches that have already occurred." *Id*., citing 6 Corbin on Contracts, § 1266, p 66. Accordingly, if properly invoked, ¶ 15(a) would only excuse GRNC from making *future* payments under ¶ 2 and performing *future* maintenance under, for example, ¶ 3(a). However, GRNC did not attempt to invoke ¶ 15(a) until after returning the McKee Sons in December 2014, and given the 20-day termination notice required, even if GRNC were entitled to invoke ¶ 15(a), that termination could not have taken effect until January 11, 2015.

Accordingly, even if ¶ 15(a) applies, GRNC remained obligated to perform its obligations under the agreement until January 11, 2015, including those set forth in ¶ 3(a).[3] See *United Roasters, Inc v Colgate-Palmolive Co*, 649 F2d 985, 990 (CA 4, 1981) (recognizing that

---

[2] To conclude, as LSSC seems to suggest, that GRNC may be held liable for failing to perform *all* repairs, even if ¶ 15(a) applies, would render ¶ 15(a) meaningless. Paragraph 15(a) operates to allow GRNC to terminate the agreement in lieu of performing certain repairs, provided that the cost for those repairs exceeds the "then value" of the vessel. Therefore, if ¶ 15(a) applies and were properly invoked by GRNC, GRNC would be absolved from its obligation to pay for those specific repairs addressed in ¶ 15(a).

[3] On appeal, GRNC confusingly argues that the reference in ¶ 3(a) to the 2018 survey, and GRNC's obligation to pay for this survey only if GRNC elects to exercise its option to extend the agreement beyond 2018, somehow relieves GRNC of its obligations under ¶ 3(a) when ¶ 15(a) is invoked. This argument is baseless. The 2018 survey is not at issue in this case.

-3-

"obligation of good faith performance" continued until the party's "right of termination was actually effective"). The evidence at trial showed that GRNC laid up the McKee Sons in December 2012 and stopped performing all maintenance. Paragraph 15(a) would not retroactively excuse GRNC's failure to perform any maintenance for two years. See *Armour & Co*, 463 F2d at 11. Additionally, ¶ 11 required GRNC to return the vessel in "in like good condition, ordinary wear and tear excepted." GRNC returned the vessel before the agreement terminated and before GRNC attempted to terminate under ¶ 15(a), making it questionable whether ¶ 11—which applies "upon termination" of the charter agreement—even governs the vessel's condition at the time of its return in December 2014. In any event, at most, ¶ 11 allowed GRNC to return the vessel with ordinary wear and tear only. Yet, there was ample evidence of conditions that exceeded normal wear and tear, including, for example, the alleged trash and hazardous waste left on the vessel, leaking pipes and hydraulic pump lines, broken sewer lines resulting in raw sewage on the vessel, leaking antifreeze, missing mechanical parts, and a broken power cord. Even if ¶ 15(a) applies, the agreement was not terminated until January 2015, and GRNC's invocation of ¶ 15(a) would not retroactively excuse any of these alleged breaches under ¶ 3(a), nor would it excuse GRNC's failure to return the vessel in the condition specified in ¶ 11. Thus, the majority's apparent concern that GRNC would be permitted to trash the McKee Sons without consequence is unfounded.

For these reasons, I respectfully dissent from Section II(A) of the majority opinion. I would also address—as discussed in this opinion—GRNC's argument that, if ¶ 15(a) applies, ¶ 15(a) also defeats LSSC's claims of breach of contract premised on other sections of the Charter Party Agreement, and would hold that those claims should properly proceed to trial; I therefore dissent from Section II(C) as well. I otherwise concur with the majority opinion.


/s/ Mark T. Boonstra